

FILED
CLERK, U.S. DISTRICT COURT

05/26/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: ___DM___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

April 2021 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR 8:21-cr-00101-CJC |
| Plaintiff, | I N D I C T M E N T |
| v. | [21 U.S.C. § 846: Conspiracy and Attempt to Distribute and Possess with Intent to Distribute Heroin; 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B), (b)(1)(C): Possession of Heroin with Intent to Distribute; 18 U.S.C. § 1956(h): Conspiracy to Commit Money Laundering; 18 U.S.C. § 1956(a)(2)(A): International Money Laundering; 18 U.S.C. § 1957: Transactional Money Laundering; 21 U.S.C. § 853 and 18 U.S.C. § 982: Criminal Forfeiture] |
| JULIO CESAR MARTINEZ, aka "Primo," VICTOR MARTINEZ, aka "Hector," VICTOR ROMERO JR., aka "Food Guy," MARTIN CERVANTES ROMERO, aka "Uncle Martin," ROBERTO ROMERO SANCHEZ, aka "Uncle Roberto," VIOLETA ROMERO, MARICELA GUERRERO, aka "Carla," MARLA PORTILLO CORDOVA, aka "Yvette," DANIEL ZAPIEN, aka "Little Danny," ERIK BRIGHT, MEGAN ELLIS, VICTOR MORETA, SHANNON JACOBI, HUNTER SANDERS, aka "Jerry," | |

///

///

///

JOSE CERVANTES,
ALICIA CARRILLO GONZALEZ,
  aka "Licenciada,"
ANGEL CERVANTES,
  aka "Godson,"
FRANCISCO SERRANO,
  aka "Paco," and
ALICIA CERVANTES,
  aka "Goddaughter,"

      Defendants.

The Grand Jury charges:

## COUNT ONE

[21 U.S.C. § 846]

[DEFENDANTS J. MARTINEZ, V. MARTINEZ, VICTOR ROMERO, M. ROMERO, R. ROMERO, VIOLETA ROMERO, GUERRERO, CORDOVA, ZAPIEN, BRIGHT, ELLIS, MORETA, JACOBI, SANDERS, J. CERVANTES, AND CARRILLO]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, and continuing through in or around April 2021, in Orange County, within the Central District of California, and elsewhere, defendants JULIO CESAR MARTINEZ, also known as ("aka") "Primo" ("J. MARTINEZ"), VICTOR MARTINEZ, aka "Hector" ("V. MARTINEZ"), VICTOR ROMERO JR., aka "Food Guy," MARTIN CERVANTES ROMERO, aka "Uncle Martin" ("M. ROMERO"), ROBERTO ROMERO SANCHEZ, aka "Uncle Roberto" ("R. ROMERO"), VIOLETA ROMERO, MARICELA GUERRERO, aka "Carla,"  MARLA PORTILLO CORDOVA, aka "Yvette," DANIEL ZAPIEN, aka "Little Danny," ERIK BRIGHT, MEGAN ELLIS, VICTOR MORETA, SHANNON JACOBI, HUNTER SANDERS, aka "Jerry," JOSE CERVANTES ("J. CERVANTES"), and ALICIA CARRILLO GONZALEZ, aka "Licenciada" ("CARRILLO"), conspired with each other and others known and unknown to the Grand Jury to knowingly and intentionally possess with intent to distribute and distribute heroin, a Schedule I

narcotic drug controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(i), (b)(1)(B)(i), (b)(1)(C).

B.    MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were to be accomplished, in substance, as follows:

Operation of the Heroin "Call Centers" and Delivery Service

1.    Defendants J. MARTINEZ and V. MARTINEZ owned and operated a heroin distribution organization in Orange County, California. Defendants GUERRERO and CORDOVA assisted defendants J. MARTINEZ and V. MARTINEZ in the day-to-day operation of the distribution organization.

2.    On an almost daily basis, defendants GUERRERO and CORDOVA took calls from heroin purchasers over the telephone and accepted orders for heroin.

3.    Defendants J. MARTINEZ, V. MARTINEZ, GUERRERO, and CORDOVA, and others, directed defendants ZAPIEN, BRIGHT, ELLIS, MORETA, JACOBI, SANDERS, and J. CERVANTES, and others to deliver the heroin to the heroin purchasers and collect payment in exchange for a cut of the heroin sales proceeds and/or heroin.

4.    Defendants J. MARTINEZ, V. MARTINEZ, GUERRERO, and CORDOVA directed others to pick-up the proceeds and provide them to defendants J. MARTINEZ and V. MARTINEZ.

5.    The heroin purchasers further distributed the heroin to their customers and/or used the heroin for personal use.  The organization distributed at least $2,000,000 in heroin.

The Sources of Supply

6.   Defendant J. MARTINEZ obtained heroin from defendants R. ROMERO in Mexico and VICTOR ROMERO in the United States. Defendant J. MARTINEZ placed his heroin orders with defendants R. ROMERO and/or VICTOR ROMERO, who would relay the orders to defendant R. ROMERO.

7.   Defendant R. ROMERO arranged for couriers, including defendant CARRILLO and others, to conceal heroin on or in their body cavities and transport heroin from Mexico to Orange County. Defendant VICTOR ROMERO received the heroin from couriers and provided it to defendants J. MARTINEZ and GUERRERO, and others.

8.   Defendant V. MARTINEZ obtained heroin from defendants M. ROMERO in Mexico and VIOLETA ROMERO in the United States. Defendant V. MARTINEZ placed his heroin orders with defendants M. ROMERO and/or VIOLETA ROMERO, who would relay the orders to defendant M. ROMERO.

9.   Defendant M. ROMERO arranged for defendant VIOLETA ROMERO to receive the heroin in the United States.  Defendant VIOLETA ROMERO provided the heroin to defendant V. MARTINEZ.

C.   OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants J. MARTINEZ, V. MARTINEZ, VICTOR ROMERO, M. ROMERO, R. ROMERO, VIOLETA ROMERO, GUERRERO, CORDOVA, ZAPIEN, BRIGHT, ELLIS, MORETA, JACOBI, SANDERS, J. CERVANTES, and CARRILLO, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

Overt Act No. 1:    On March 3, 2017, defendant GUERRERO, using coded language, agreed to provide heroin to "Julie," who, unbeknownst to defendant GUERRERO, was an undercover law enforcement officer.

Overt Act No. 2:    On March 3, 2017, defendant GUERRERO contacted defendant SANDERS and directed defendant SANDERS to deliver heroin to Julie.

Overt Act No. 3:    On March 3, 2017, defendant SANDERS met Julie and provided the heroin in exchange for $150.

Overt Act No. 4:    On June 15, 2017, defendant GUERRERO, using coded language, directed defendant BRIGHT to deliver heroin to customers, and defendant BRIGHT confirmed the heroin quantities he would deliver and the prices.

Overt Act No. 5:    On June 15, 2017, defendant GUERRERO, using coded language, directed defendant BRIGHT to deliver narcotics proceeds to defendant VICTOR ROMERO and pick up heroin for further distribution, and defendant BRIGHT agreed.

Overt Act No. 6:    On June 18, 2017, defendant GUERRERO, using coded language, directed defendant SANDERS to provide narcotics proceeds to defendant JACOBI and pick up heroin for further distribution, and directed defendant JACOBI to collect narcotics proceeds and provide heroin to defendant SANDERS for further distribution.

Overt Act No. 7:    On June 18, 2017, defendants CORDOVA and GUERRERO, using coded language, discussed the heroin distribution operation.  Defendant CORDOVA told defendant GUERRERO that defendant V. MARTINEZ did not state they were closing the call center early and she needed more heroin for customers that day.

Overt Act No. 8:   On June 25, 2017, defendants V. MARTINEZ and GUERRERO, using coded language, discussed the total sales of narcotics, the delivery of narcotics proceeds, and resupplying the heroin distributors.

Overt Act No. 9:   On June 29, 2017, defendant GUERRERO, using coded language, discussed with a co-conspirator the business model for the call center, the methods that the organization used when delivering heroin to prevent law enforcement from detecting the operation, and the organization's use of different sources of supply.

Overt Act No. 10:   On June 30, 2017, defendant GUERRERO told defendant CORDOVA that defendant J. MARTINEZ had fired defendant GUERRERO and stated, "if I go down, everybody goes down, believe me."

Overt Act No. 11:   On June 30, 2017, defendants J. MARTINEZ and CORDOVA, using coded language, discussed defendant CORDOVA running defendant J. MARTINEZ's call center for $1,500 per week.

Overt Act No. 12:   On July 6, 2017, defendant GUERRERO, using coded language, agreed to provide heroin to Julie, who, unbeknownst to defendant GUERRERO, was an undercover law enforcement officer.

Overt Act No. 13:   On July 6, 2017, defendant GUERRERO contacted defendant ELLIS and directed defendant ELLIS to deliver heroin to Julie.

Overt Act No. 14:   On July 6, 2017, defendant ELLIS met Julie and provided the heroin in exchange for $150.

Overt Act No. 15:   On July 21, 2017, defendant GUERRERO, using coded language, directed defendant ELLIS to provide defendant VICTOR ROMERO narcotics proceeds and pick up heroin for further distribution.

Overt Act No. 16:   On July 22, 2017, defendant GUERRERO, using coded language, directed defendant VICTOR ROMERO to provide heroin to defendant ELLIS and pick up narcotics proceeds.

Overt Act No. 17:   On July 22, 2017, defendant GUERRERO, using coded language, directed defendant ELLIS to provide narcotics proceeds to defendant VICTOR ROMERO and pick up heroin for further distribution.

Overt Act No. 18:   On July 22, 2017, defendant ELLIS told defendant GUERRERO that she did not have the narcotics proceeds and defendant GUERRERO told defendant ELLIS that "the boss" was going to be angry and fire her.

Overt Act No. 19:   On August 5, 2017, defendant GUERRERO, using coded language, agreed to provide heroin to a customer.

Overt Act No. 20:   On August 5, 2017, defendant GUERRERO contacted defendant ZAPIEN and directed defendant ZAPIEN to deliver heroin to the customer.

Overt Act No. 21:   On August 5, 2017, defendant GUERRERO contacted defendant VICTOR ROMERO and instructed him to meet defendant ZAPIEN to provide heroin for customers.

Overt Act No. 22:   On August 5, 2017, defendant GUERRERO, using coded language, discussed with defendant ZAPIEN the total heroin sales for the day and directed ZAPIEN to obtain additional heroin and then deliver it to customers.

Overt Act No. 23:   On August 9, 2017, defendant GUERRERO, using coded language, agreed to provide heroin to three customers.

Overt Act No. 24:   On August 9, 2017, defendant GUERRERO contacted defendant ZAPIEN and directed defendant ZAPIEN to deliver heroin to the customers.

Overt Act No. 25:    On August 9, 2017, defendant GUERRERO contacted defendant VICTOR ROMERO and, using coded language, directed him to meet with defendant ZAPIEN to provide heroin to be delivered to customers.  Defendant ZAPIEN, using coded language, confirmed to defendant GUERRERO that he had met defendant VICTOR ROMERO and obtained the heroin.

Overt Act No. 26:    On August 9, 2017, defendant GUERRERO, using coded language, discussed with defendant ZAPIEN the total heroin sales for the day and defendant GUERRERO directed defendant ZAPIEN to make additional heroin deliveries.

Overt Act No. 27:    On August 29, 2017, defendant GUERRERO, using coded language, directed VICTOR ROMERO to collect narcotics proceeds and provide heroin to defendant MORETA for further distribution.

Overt Act No. 28:    On August 30, 2017, defendant MORETA possessed approximately 29.2 grams of heroin.

Overt Act No. 29:    On August 30, 2017, defendants GUERRERO and VICTOR ROMERO, using coded language, discussed changing the cars used to deliver heroin because defendant MORETA was arrested by law enforcement while possessing approximately 29.2 grams of heroin.

Overt Act No. 30:    On August 31, 2017, defendant GUERRERO and defendant VICTOR ROMERO again discussed defendant MORETA's arrest and the need to be careful to avoid detection by law enforcement.

Overt Act No. 31:    On September 1, 2017, defendants VICTOR ROMERO and R. ROMERO, using coded language, discussed heroin supply issues and a heroin delivery to defendant J. MARTINEZ.

Overt Act No. 32:    On September 2, 2017, defendant J. MARTINEZ, using coded language, told defendant VICTOR ROMERO that customers had

been complaining about the quality of the heroin and defendant VICTOR ROMERO stated that he would let defendant R. ROMERO know of the quality issue.

Overt Act No. 33:   On September 6, 2017, defendant CARRILLO entered the United States from Mexico to deliver heroin to defendant VICTOR ROMERO.  Defendants CARRILLO and VICTOR ROMERO met in Santa Ana where defendant CARRILLO provided heroin to defendant VICTOR ROMERO and defendant VICTOR ROMERO provided defendant CARRILLO with narcotics proceeds.

Overt Act No. 34:   On October 1, 2017, defendant V. MARTINEZ told defendant VIOLETA ROMERO to tell defendant M. ROMERO to call defendant V. MARTINEZ.

Overt Act No. 35:   On October 2, 2017, using coded language in a telephone call, defendant M. ROMERO told defendant V. MARTINEZ that he was located in Mexico and could supply heroin for distribution in the Los Angeles area.

Overt Act No. 36:   On October 3, 2017, defendant VIOLETA ROMERO met defendant V. MARTINEZ in in Anaheim, California and provided him heroin.

Overt Act No. 37:   On October 3, 2017. defendant V. MARTINEZ met with defendant J. CERVANTES and provided him heroin.

Overt Act No. 38:   On October 4, 2017, defendant V. MARTINEZ, using coded language, placed a heroin order with defendant M. ROMERO. Defendant M. ROMERO told defendant V. MARTINEZ that his heroin was better than defendant R. ROMERO's heroin.

Overt Act No. 39:   On October 4, 2017, defendant V. MARTINEZ, using coded language, told defendant VIOLETA ROMERO that he would meet defendant VIOLETA ROMERO the following day to deliver heroin.

Overt Act No. 40:   On October 5, 2017, defendant VIOLETA ROMERO met defendant V. MARTINEZ in Anaheim, California and provided heroin to defendant V. MARTINEZ.

Overt Act No. 41:   On October 13, 2017, defendant R. ROMERO, using coded language, told defendant VICTOR ROMERO that defendant CARRILLO entered the United States from Mexico and would be making a heroin delivery and he should provide narcotics proceeds to defendant CARRILLO.

Overt Act No. 42:   On October 13, 2017, defendants CARRILLO and VICTOR ROMERO met in Santa Ana, where defendant CARRILLO provided heroin to defendant VICTOR ROMERO and defendant VICTOR ROMERO provided defendant CARRILLO with narcotics proceeds.

Overt Act No. 43:   On October 13, 2017, defendant VICTOR ROMERO contacted defendant R. ROMERO and confirmed the meeting between defendants VICTOR ROMERO and CARRILLO.

Overt Act No. 44:   On October 14, 2017,defendant CARRILLO entered the United States from Mexico to deliver heroin to defendant VICTOR ROMERO.

Overt Act No. 45:   On October 14, 2017, defendant R. ROMERO, using coded language, told defendant VICTOR ROMERO that defendant CARRILLO had arrived to deliver the heroin.

Overt Act No. 46:   On October 14, 2017, defendants CARRILLO and VICTOR ROMERO met in Santa Ana, where defendant CARRILLO provided heroin to defendant VICTOR ROMERO and defendant VICTOR ROMERO provided defendant CARRILLO with narcotics proceeds.

Overt Act No. 47:   On October 15, 2017, defendant J. MARTINEZ, using coded language, directed a co-conspirator to conduct counter-surveillance to ensure that she was not being followed by law

enforcement and then deliver narcotics proceeds to defendant J. MARTINEZ.

Overt Act No. 48:   On October 16, 2017, defendant CORDOVA, using coded language, told defendant V. MARTINEZ that defendant J. CERVANTES needed to pick up heroin, and defendant V. MARTINEZ told defendant CORDOVA to tell defendant J. CERVANTES to go to a specified location.

Overt Act No. 49:   On October 16, 2017, defendant J. CERVANTES possessed approximately 72.58 grams of heroin when he was stopped by law enforcement.

Overt Act No. 50:   On October 16, 2017, defendants J. MARTINEZ and J. CERVANTES, using coded language, discussed defendant J. CERVANTES's arrest and whether law enforcement had asked defendant J. CERVANTES about defendant V. ROMERO.

Overt Act No. 51:   On November 7, 2017, defendant ZAPIEN possessed approximately 3.44 grams of heroin, a digital scale, and multiple knives.

Overt Act No. 52:   On December 5, 2017, defendant J. MARTINEZ, using coded language, instructed defendant GUERRERO to have the heroin distributors resupplied with additional heroin and told her where to deliver the narcotics proceeds.

Overt Act No. 53:   On December 5, 2017, defendant J. MARTINEZ, using coded language, directed defendant GUERRERO to provide narcotics proceeds to a co-conspirator.

Overt Act No. 54:   On December 5, 2017, defendant J. MARTINEZ, using coded language, then told another co-conspirator that defendant GUERRERO was going to be providing $1,600 in narcotics proceeds.

Overt Act No. 55:   On December 6, 2017, defendant J. MARTINEZ met with a co-conspirator and obtained $1,690 in narcotics proceeds that was seized by law enforcement during a subsequent vehicle stop.

Overt Act No. 56:   On December 7, 2017, defendant J. MARTINEZ, using coded language, told defendant GUERRERO that when he saw the police lights behind him he took the SIM card from his telephone and swallowed it.  Defendants GUERRERO and J. MARTINEZ, using coded language, agreed that the police dog likely smelled the narcotics proceeds.

Overt Act No. 57:   On December 14, 2017, defendants R. ROMERO and VICTOR ROMERO, using coded language, discussed that defendant CARRILLO would be coming to the United States from Mexico to deliver heroin to defendant VICTOR ROMERO.

Overt Act No. 58:   On December 14, 2017, defendants CARRILLO and VICTOR ROMERO arranged to meet in Santa Ana where defendant CARRILLO would provide heroin to defendant VICTOR ROMERO.

Overt Act No. 59:   On December 14, 2017, defendant CARRILLO possessed approximately 321 grams of heroin as she attempted to meet with defendant VICTOR ROMERO and was stopped by law enforcement.

Overt Act No. 60:   On December 15, 2017, defendant V. MARTINEZ, using coded language, coordinated a heroin delivery with defendant VIOLETA ROMERO.

Overt Act No. 61:   On December 15, 2017, defendant VIOLETA ROMERO provided heroin to defendant V. MARTINEZ.

Overt Act No. 62:   On December 15, 2017, defendant V. MARTINEZ possessed approximately 496 grams of heroin.

Overt Act No. 63:   On May 20, 2020, defendant GUERRERO received a call from a customer who, using coded language, asked to purchase

12

three grams of heroin.  Defendant GUERRERO instructed the customer to a specific location at which the customer was provided three grams of heroin in exchange for $100 by a co-conspirator.

Overt Act No. 64:   On April 10, 2021, in a telephone call with a confidential source working with law enforcement, defendant J. MARTINEZ, using coded language, agreed to sell six grams of heroin. Defendant J. MARTINEZ instructed the confidential source to a specific location where a co-conspirator provided the confidential source approximately six grams of heroin in exchange for $240.

COUNT TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

[DEFENDANT MORETA]

On or about August 30, 2017, in Orange County, within the Central District of California, defendant VICTOR MORETA knowingly and intentionally possessed with intent to distribute approximately 29.2 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(C); 18 U.S.C. § 2(a)]

[DEFENDANTS V. MARTINEZ and J. CERVANTES]

On or about October 16, 2017, in Orange County, within the Central District of California, defendants VICTOR MARTINEZ, aka "Hector," and JOSE CERVANTES, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute approximately 72.58 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(C)]

[DEFENDANT ZAPIEN]

On or about November 7, 2017, in Orange County, within the Central District of California, defendant DANIEL ZAPIEN, also known as "Little Danny," knowingly and intentionally possessed with intent to distribute approximately 3.4 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(i)]

[DEFENDANT CARRILLO]

On or about December 14, 2017, in Orange County, within the Central District of California, defendant ALICIA CARRILLO GONZALEZ, aka "Licenciada," knowingly and intentionally possessed with intent to distribute at least 100 grams, that is, approximately 321 grams, of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

COUNT SIX

[21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B)(i)]

[DEFENDANT VICTOR ROMERO]

On or about December 14, 2017, in Orange County, within the Central District of California, defendant VICTOR ROMERO JR., aka "Food Guy," knowingly and intentionally attempted to possess with intent to distribute at least 100 grams, that is, approximately 321 grams, of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

COUNT SEVEN

[18 U.S.C. § 1956(h)]

[DEFENDANTS J. MARTINEZ, V. MARTINEZ, VICTOR ROMERO, GUERRERO, CORDOVA, ANGEL CERVANTES, SERRANO, AND ALICIA CERVANTES]

A.    INTRODUCTORY ALLEGATIONS

1.    Individual A was the mother of defendants JULIO CESAR MARTINEZ, aka "Primo," and VICTOR MARTINEZ, aka "Hector."  Defendant V. MARTINEZ was married to Individual B, whose mother and father were Individual C and Individual D and whose siblings were defendant MARLA PORTILLO CORDOVA, aka "Yvette,"  and Individual E.  Individual F and Individual G were the siblings of defendant J. MARTINEZ and defendant V. MARTINEZ.

2.    Individual A controlled the following bank accounts: Bank of America account 4290 (BOA 4290 Account), Bank of America account 3395 (BOA 3395 Account), Bank of America account 5879 (BOA 5879 Account), Bank of America account 8500 (BOA 8500 Account), Bank of America account 9940 (BOA 9940 Account), Bank of America account 4880 (BOA 4880 Account), Citibank account 1459 (Citibank 1459 Account), and Orange County Credit Union account 3100 (OCCU 3100 Account). Between 2013 and 2020, there was a total of $409,543 in cash deposits into these accounts.  Between May 23, 2018 and June 22, 2018, a total of at least $30,000 in cash was deposited into BOA 9940 Account.

3.    Individual C controlled the following bank accounts: Wells Fargo Bank account 0457 (WFB 0457 Account), Bank of America account 6042 (BOA 6042 Account), Bank of America account 6943 (BOA 6943 Account), and Bank of America account 1588 (BOA 1588 Account). Between 2018 and 2019, there was a total of $171,130 in cash deposits into these accounts.  Between June 25, 2018 and November 13, 2018, a

total of at least $42,000 in cash was deposited into Wells Fargo 0457 Account.  Between June 29, 2018 and October 9, 2018, a total of at least $87,760 in cash was deposited into BOA 6042 Account.

4.   Defendant CORDOVA controlled the following bank accounts: Bank of America account 0658 (BOA 0658 Account) and Bank of America account 7527 (BOA 7527 Account).  Between 2015 and 2018, there was a total of $77,779 in cash deposits into these accounts.  Between June 20, 2018 and July 30, 2018, a total of at least $20,600 in cash was deposited into BOA 0658 Account.

5.   Individual C and Individual E control Bank of America Account 6943 (BOA 6943 Account).

6.   Along with Individual C, Individual D controlled the following bank accounts: Bank of America account 6042 (BOA 6042 Account), and Bank of America account 1588 (BOA 1588 Account). Between 2018 and 2019, there was a total of $164,420 in cash deposits into these accounts.

7.   Individual F controlled the following bank accounts: Orange County Credit Union account 1800 (OCCU 1800 Account), Bank of America account 6587 (BOA 6587 Account), Bank of America account 6744 (BOA 6744 Account), and Chase Bank account 2370 (Chase 2370 Account). Between 2013 and 2016, there was a total of $298,118 in cash deposits into these accounts.

8.   Individual G controlled the following bank accounts: Bank of America account 9179 (BOA 9179 Account), Bank of America account 6482 (BOA 6482 Account), Bank of America account 8806 (BOA 8806 Account), Bank of America account 1626 (BOA 1626 Account), Chase Bank account 2131 (Chase 2131 Account), and Chase Bank account 2935 (Chase

2935 Account).  Between 2013 and 2020, there was a total of $202,672 in cash deposits into these accounts.

9.   La Rue Escrow Inc. was an escrow company located in Menifee, California.  On or about November 27, 2018, La Rue Escrow Account 020679-MM was opened for the benefit of Individual D and defendant CORDOVA.

10.  On or about December 27, 2018, a deed of trust for 27295 Legend Lane, Hemet, California was recorded in the County of Riverside in the name of Individual D and defendant CORDOVA.

11.  From January 4, 2019 to the present, defendant V. MARTINEZ's immediate family has lived at 27295 Legend Lane, Hemet California.

B.  OBJECTS OF THE CONSPIRACY

Beginning on a date unknown and continuing until at least 2020, in Orange and Riverside Counties, within the Central District of California, and elsewhere, defendants J. MARTINEZ, V. MARTINEZ, VICTOR ROMERO JR., aka "Food Guy," MARICELA GUERRERO, aka "Carla," CORDOVA, ANGEL CERVANTES, aka "Godson," FRANCISCO SERRANO, aka "Paco," ALICIA CERVANTES, aka "Goddaughter,"  conspired with each other, Individual A, Individual B, Individual C, Individual D, Individual E, Individual F, Individual G and others known and unknown to the Grand Jury to knowingly and intentionally commit the following offenses:

1.   Knowingly conducting and attempting to conduct financial transactions involving the proceeds of a specified unlawful activity, that is, the unlawful distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), knowing that the transactions were designed in whole and in part to conceal

21

and disguise the nature, location, source, ownership, and control of
the proceeds of said specified unlawful activity, in violation of
Title 18, United States Code, Section 1956(a)(1)(B)(i);

2.   Knowingly conducting and attempting to conduct financial
transactions involving the proceeds of a specified unlawful activity,
that is, the unlawful distribution of controlled substances, in
violation of Title 21, United States Code, Section 841(a)(1), knowing
that the transactions were designed in whole and in part to avoid a
transaction reporting requirement under Federal law, in violation of
Title 18, United States Code, Section 1956 (a)(1)(B)(ii); and

3.   Knowingly engaging and attempting to engage in monetary
transactions in criminally derived property of a value greater than
$10,000, which property was derived from a specified unlawful
activity, that is, the unlawful distribution of controlled
substances, in violation of Title 21, United States Code, Section
841(a)(1), in violation of Title 18, United States Code, Section
1957.

C.   <u>MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
ACCOMPLISHED</u>

The objects of the conspiracy were accomplished, in substance,
as follows:

1.   Defendants J. MARTINEZ, V. MARTINEZ, VICTOR ROMERO,
GUERRERO, and CORDOVA agreed to engage in narcotics distribution as
alleged in Count One, Section B, which is incorporated here.

2.   Defendants J. MARTINEZ, V. MARTINEZ, and GUERRERO, using
coded language, contacted defendants VICTOR ROMERO, CORDOVA, ANGEL
CERVANTES, SERRANO, and ALICIA CERVANTES, and others, and directed

them to collect cash proceeds from the sale of heroin ("heroin proceeds").

3.    Defendants VICTOR ROMERO, CORDOVA, ANGEL CERVANTES, SERRANO, and ALICIA CERVANTES, and others collected heroin proceeds and provided the heroin proceeds to defendants J. MARTINEZ and V. MARTINEZ.

4.    Defendants J. MARTINEZ and V. MARTINEZ caused the deposit of at least $2,000,000 in proceeds from heroin sales into bank accounts held in the names of defendant CORDOVA, Individuals A, C, D, E, F, and G, and others, in order to conceal the source of the proceeds.

5.    Defendant CORDOVA, Individual A, C, and others, at times structured the deposits into the bank accounts to evade reporting requirements by depositing the money at different banks and/or breaking the deposits up into amounts $10,000 and under.

6.    Defendant V. MARTINEZ directed defendant CORDOVA and others to further conceal the heroin proceeds by transferring the money between various bank accounts held by family members.

7.    Defendant V. MARTINEZ directed defendant CORDOVA, and Individuals A, C, D, and E, to transfer heroin sales proceeds into an escrow account that was used to purchase property for defendant V. MARTINEZ's benefit.

D.    OVERT ACTS

    In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, on or about the following dates, defendants J. MARTINEZ, V. MARTINEZ, VICTOR ROMERO, GUERRERO, CORDOVA, ANGEL CERVANTES, SERRANO, and ALICIA CERVANTES, and others known and unknown to the Grand Jury, committed various overt acts within the

Central District of California, and elsewhere, including but not limited to the following:

Overt Act No. 1:   On September 3, 2013, Individual F deposited $5,000 in cash narcotics proceeds into BOA 6744 Account.

Overt Act No. 2:   On September 4, 2013, Individual F deposited $4,150 in cash narcotics proceeds into BOA 6744 Account.

Overt Act No. 3:   On September 9, 2013, Individual F deposited $4,000 in cash narcotics proceeds into BOA 6744 Account.

Overt Act No. 4:   On February 4, 2016, Individual A deposited $5,000 in cash narcotics proceeds into BOA 5879 Account.

Overt Act No. 5:   On August 7, 2017, defendant GUERRERO told defendant ANGEL CERVANTES that he should have collected $673 in narcotics proceeds, defendant ANGEL CERVANTES confirmed that he collected the narcotics proceeds, and defendant GUERRERO told defendant ANGEL CERVANTES to hold the narcotics proceeds.

Overt Act No. 6:   On August 17, 2017, defendant SERRANO asked defendant VICTOR ROMERO to pick up $1,800 in narcotics proceeds from Daniel Zapien, a member of the narcotics distribution organization, and defendant VICTOR ROMERO agreed to pick up the narcotics proceeds.

Overt Act No. 7:   On August 17, 2017, defendant SERRANO asked defendant VICTOR ROMERO to pick up $1,305 in narcotics proceeds from the other heroin distribution call center and defendant VICTOR ROMERO confirmed he picked up the narcotics proceeds.

Overt Act No. 8:   On or about August 18, 2017, defendant VICTOR ROMERO told defendant R. ROMERO that he had sent $26,200 in narcotics proceeds, and defendant R. ROMERO confirmed that he received that amount and that he would be sending someone with narcotics tomorrow.

Overt Act No. 9:   On or about August 26, 2017, defendant J. MARTINEZ and defendant GUERRERO discussed whether to send defendant ANGEL CERVANTES or defendant SERRANO to pick up narcotics proceeds.  Defendant GUERRERO told defendant J. MARTINEZ that defendant SERRANO was available now and had already picked up $2,500 in narcotics proceeds, and defendant J. MARTINEZ told defendant GUERRERO to send defendant SERRANO.

Overt Act No. 10:   On or about September 12, 2017, defendant GUERRERO told defendant ALICIA CERVANTES to collect $3,705 in narcotics proceeds, and defendant ALICIA CERVANTES agreed to pick up the narcotics proceeds.

Overt Act No. 11:   On or about September 12, 2017, defendant ALICIA CERVANTES told defendant GUERRERO that she collected the narcotics proceeds.

Overt Act No. 12:   On or about September 24, 2017, defendant GUERRERO explained to defendant ALICIA CERVANTES how she should bundle the money and spray it with perfume in order to remove the smell of narcotics from the money.  Defendant GUERRERO confirmed with defendant ALICIA CERVANTES that she collected $2,730 in narcotics proceeds, and defendant ALICIA CERVANTES confirmed that she collected the narcotics proceeds.

Overt Act No. 13:   On or about October 15, 2017, defendant J. MARTINEZ told defendant ALICIA CERVANTES to collect $1,240 in narcotics proceeds, and defendant ALICIA CERVANTES agreed to pick up the narcotics proceeds.

Overt Act No. 14:   On or about October 15, 2017, defendant ALICIA CERVANTES told defendant J. MARTINEZ that she collected the

narcotics proceeds, and defendant J. MARTINEZ told her to follow him to a location.

Overt Act No. 15:   On or about October 20, 2017, defendant J. MARTINEZ told defendant ALICIA CERVANTES to collect narcotics proceeds, and defendant ALICIA CERVANTES responded that she already collected the narcotics proceeds, that all of the money was there, and that he would call her the following day.

Overt Act No. 16:   On October 21, 2017, defendant J. MARTINEZ told defendant ALICIA CERVANTES that he would meet her later in the day to collect the narcotics proceeds.  Defendant J. MARTINEZ told defendant ALICIA CERVANTES to be on the lookout for undercover law enforcement vehicles, and defendant ALICIA CERVANTES stated that she always takes different routes after dropping narcotics proceeds.

Overt Act No. 17:   On November 5, 2017, defendant GUERRERO told defendant ALICIA CERVANTES to collect $1,230 in narcotics proceeds and deliver heroin, and defendant ALICIA CERVANTES agreed to do so.

Overt Act No. 18:   On December 5, 2017, defendant ANGEL CERVANTES told defendant J. MARTINEZ that he collected the narcotics proceeds, and defendant J. MARTINEZ told him to arrange the narcotics proceeds smallest to largest and told him that he would pick it up the following day.

Overt Act No. 19:   On December 6, 2017, defendant J. MARTINEZ met with defendant ANGEL CERVANTES in Santa Ana, California, and collected the narcotics proceeds.

Overt Act No. 20:   On December 6, 2017, upon being stopped by law enforcement, defendant J. MARTINEZ falsely told law enforcement that the cash he received from defendant ANGEL CERVANTES was money

26

that was given to him to purchase materials for a construction project.

Overt Act No. 21: On December 7, 2017, defendant J. MARTINEZ told defendant GUERRERO that he obtained a new telephone, that he destroyed the chip in his telephone as soon as he saw the police lights, and that the seized narcotics proceeds may have smelled like narcotics because they came from a member of the organization that uses heroin.

Overt Act No. 22: On June 20, 2018, defendant CORDOVA deposited $4,900 in cash narcotics proceeds into BOA 0658 Account.

Overt Act No. 23: On June 22, 2018, Individual A deposited $6,000 in cash narcotics proceeds into BOA 9940 Account.

Overt Act No. 24: On June 25, 2018, defendant CORDOVA deposited $5,720 in cash narcotics proceeds into BOA 0658 Account.

Overt Act No. 25: On June 25, 2018, Individual C deposited $6,000 in cash narcotics proceeds into Wells 0457 Account.

Overt Act No. 26: On June 29, 2018, Individual C deposited $5,000 in cash narcotics proceeds into BOA 6042 Account.

Overt Act No. 27: On June 30, 2018, defendant CORDOVA deposited $5,000 in cash narcotics proceeds into BOA 0658 Account.

Overt Act No. 28: On July 12, 2018, Individual C deposited $8,880 in cash narcotics proceeds into BOA 1588 Account.

Overt Act No. 29: On July 13, 2018, Individual C deposited $6,100 in cash narcotics proceeds into BOA 6042 Account in Santa Ana, California.

Overt Act No. 30: On July 30, 2018, defendant CORDOVA deposited $4,980 in cash narcotics proceeds into BOA 0658 Account.

<u>Overt Act No. 31:</u>   On July 31, 2018, Individual C deposited $10,000 in cash narcotics proceeds into BOA 6042 Account in Santa Ana, California.

<u>Overt Act No. 32:</u>   On August 9, 2018, Individual C deposited $10,000 in cash narcotics proceeds into BOA 6042 Account in Santa Ana, California.

<u>Overt Act No. 33:</u>   On August 11, 2018, Individual C deposited $9,900 in cash narcotics proceeds into BOA 6042 Account in Santa Ana, California.

<u>Overt Act No. 34:</u>   On September 28, 2018, Individual C deposited $10,000 in cash narcotics proceeds into BOA 6042 Account in Santa Ana, California.

<u>Overt Act No. 35:</u>   On September 28, 2018, Individual C deposited $2,900 in cash narcotics proceeds into Wells 0457 Account in Santa Ana, California.

<u>Overt Act No. 36:</u>   On September 29, 2018, Individual C deposited $9,800 in cash narcotics proceeds into BOA 6042 Account in Santa Ana, California.

<u>Overt Act No. 37:</u>   On November 13, 2018, Individual C transferred $40,000 in narcotics proceeds via wire from Wells 0457 Account to defendant CORDOVA's BOA 0658 Account.

<u>Overt Act No. 38:</u>   On November 27, 2018, defendant CORDOVA transferred $10,000 in narcotics proceeds via wire from BOA 0658 Account to La Rue Escrow Account 020679-MM.

<u>Overt Act No. 39:</u>   On December 19, 2018, Individual C transferred $99,000 in narcotics proceeds via wire from BOA 6042 Account to La Rue Escrow Account 020679-MM.

Overt Act No. 40:  On December 21, 2018, Individual A transferred $10,000 in narcotics proceeds via wire from BOA 9940 Account to Individual C and Individual E's BOA 6943 Account.

Overt Act No. 41:  On December 24, 2018, Individual C transferred $18,464 in narcotics proceeds from BOA 6943 Account to Individual C and Individual D's BOA 1588 Account.

Overt Act No. 42:  On December 24, 2018, Individual C and Individual D transferred $18,433.17 in narcotics proceeds via wire from BOA 1588 Account to La Rue Escrow Account 020679-MM.

Overt Act No. 43:  On December 24, 2018, defendant CORDOVA transferred $48,000 in narcotics proceeds via wire from BOA 0658 to La Rue Escrow Account 020679-MM.

Overt Act No. 44:  On May 9, 2019, Individual G deposited $9,000 in cash narcotics proceeds into BOA 9179 Account.

Overt Act No. 45:  On May 13, 2019, Individual G deposited $8,980 in cash narcotics proceeds into BOA 9179 Account.

COUNT EIGHT

[18 U.S.C. § 1956(a)(2)(A); 18 U.S.C. §§ 2(a), (b)]

[DEFENDANTS VICTOR ROMERO AND R. ROMERO]

On or about August 17, 2017, in Orange County, within the Central District of California, and elsewhere, defendants VICTOR ROMERO JR., aka "Food Guy," and ROBERTO ROMERO SANCHEZ, aka "Uncle Roberto," together with others known and unknown to the Grand Jury, each aiding and abetting the other, transmitted and transferred, and willfully caused the transmission and transfer of, $26,200 in United States Currency from a place in the United States, that is, Orange County, California, to a place outside the United States, that is, Mexico, with the intent to promote the carrying on of specified unlawful activity, that is, the unlawful distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT NINE

[18 U.S.C. § 1956(a)(2)(A); 18 U.S.C. §§ 2(a), (b)]

[DEFENDANTS VICTOR ROMERO AND R. ROMERO]

On or about August 23, 2017, in Orange County, within the Central District of California, and elsewhere, defendants VICTOR ROMERO JR., aka "Food Guy," and ROBERTO ROMERO SANCHEZ, aka "Uncle Roberto," together with others known and unknown to the Grand Jury, each aiding and abetting the other, transmitted and transferred, and willfully caused the transmission and transfer of, $1,200 in United States Currency from a place in the United States, that is, Orange County, California, to a place outside the United States, that is, Mexico, with the intent to promote the carrying on of specified unlawful activity, that is, the unlawful distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

COUNTS TEN THROUGH THIRTEEN

[18 U.S.C. § 1957; 18 U.S.C. §§ 2(a), (b)]

[DEFENDANTS V. MARTINEZ AND CORDOVA]

1.   The Grand Jury re-alleges Paragraphs 1 through 11 of Section A of Count Seven of this Indictment and Paragraphs 1 through 7 of Section C of Count Seven of this Indictment here.

2.   On or about the following dates, in Orange County and Riverside County, within the Central District of California, and elsewhere, defendants VICTOR MARTINEZ, aka "Hector," and MARLA PORTILLO CORDOVA, aka "Yvette," together with others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly engaged in and willfully caused others to engage in the following monetary transactions in criminally derived property of a value greater than $10,000, which property, in fact, was derived from specified unlawful activity, that is, the unlawful distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1):

| COUNT | DEFENDANT(S) | DATE | TRANSACTION |
|-------|--------------|------|-------------|
| TEN | V. MARTINEZ and CORDOVA | 11/13/2018 | Payment of approximately $40,000 from Individual C's WFB 0457 Account to Defendant CORDOVA's BOA 0658 Account |
| ELEVEN | V. MARTINEZ | 12/19/2018 | Payment of approximately $99,000 from Individual C's BOA 6042 Account to La Rue Escrow Account 020679-MM |
| TWELVE | V. MARTINEZ and CORDOVA | 12/24/2018 | Payment of approximately $48,000 from Defendant CORDOVA's BOA 0658 Account to La Rue Escrow Account 020679-MM |

| COUNT | DEFENDANT(S) | DATE | TRANSACTION |
|-------|--------------|------|-------------|
| THIRTEEN | V. MARTINEZ | 12/24/2018 | Payment of approximately $18,433.17 from Individual C's and Individual D's BOA 1588 Account to La Rue Escrow Account 020679-MM |

FORFEITURE ALLEGATION ONE

[21 U.S.C. § 853]        1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853, in the event of any defendant's conviction of the offenses set forth in any of Counts One through Six of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)   All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from any such offense;

(b)   All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of any such offense; and

(c)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), any defendant so convicted, shall forfeit substitute property if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in

34

value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of any defendant's conviction of the offenses set forth in any of Counts Seven through Thirteen of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

(a)   Any property, real or personal, involved in such offense, and any property traceable to such property; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), any defendant so convicted, shall forfeit substitute property, if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the

course of the money laundering offense unless the defendant, in

committing the offense or offenses giving rise to the forfeiture,

conducted three or more separate transactions involving a total of

$100,000.00 or more in any twelve-month period.

A TRUE BILL

/S/

Foreperson

TRACY L. WILKISON
Acting United States Attorney

*Brandon Fox*

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

JOANNA M. CURTIS
Assistant United States Attorney
Chief, Violent and Organized
Crime Section

JOSEPH T. MCNALLY
Assistant United States Attorney
Violent and Organized Crime
Section

KEVIN J. BUTLER
Assistant United States Attorney
Violent and Organized Crime
Section