E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
KEVIN J. BUTLER (Cal. Bar No. 329129)
Assistant United States Attorneys
        United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-6495
        Facsimile: (213) 894-2406
        E-mail:   Kevin.butler2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>                        v.<br><br>VICTOR MARTINEZ,<br><br>                Defendant. | No. SA CR 21-101-CJC<br><br>PLEA AGREEMENT FOR DEFENDANT<br>VICTOR MARTINEZ |

     1.   This constitutes the plea agreement between VICTOR MARTINEZ
("defendant") and the United States Attorney's Office for the Central
District of California (the "USAO") in the above-captioned case.
This agreement is limited to the USAO and cannot bind any other
federal, state, local, or foreign prosecuting, enforcement,
administrative, or regulatory authorities.

                        DEFENDANT'S OBLIGATIONS

     2.   Defendant agrees to:

          a.   At the earliest opportunity requested by the USAO and
provided by the Court, appear and plead guilty to count one of the
indictment in United States v. Julio Cesar Martinez et al., SA CR No.

21-101-CJC, which charges defendant with conspiracy to distribute heroin in violation of 21 U.S.C. § 846.

     b.   Not contest facts agreed to in this agreement.

     c.   Abide by all agreements regarding sentencing contained in this agreement.

     d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

     e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

     f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

     g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

   3.   Defendant further agrees:

     a.   To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty, specifically including, but not limited to, the following:

     i.   The real property located at 27295 Legend Lane, Hemet, California;

1           ii.  $1,000.00 U.S. Currency seized at 27295 Legend

2 Lane, Hemet, CA on July 13, 2021;

3           iii. One 2016 GMC Denali, Vehicle Identification

4 Number 1GT12UE81GF158729;

5           iv.  One 2019 EZ EL716 Trailer, Vehicle Identification

6 Number 1E9AT1923KA384696; and

7           v.   One 2019 Can-Am Maverick x3 Max Turbo UTV,

8 Vehicle Identification Number 3JBVMAY27KK000887 (collectively, the

9 "Forfeitable Property").

10       b.   To the Court's entry of an order of forfeiture at or

11 before sentencing with respect to the Forfeitable Property and to the

12 forfeiture of the assets.

13       c.   That the Preliminary Order of Forfeiture shall become

14 final as to the defendant upon entry.

15       d.   To take whatever steps are necessary to pass to the

16 United States clear title to the Forfeitable Property, including,

17 without limitation, the execution of a consent decree of forfeiture

18 and the completing of any other legal documents required for the

19 transfer of title to the United States.

20       e.   Not to contest any administrative forfeiture

21 proceedings or civil judicial proceedings commenced against the

22 Forfeitable Property.  If defendant submitted a claim and/or petition

23 for remission for all or part of the Forfeitable Property on behalf

24 of himself or any other individual or entity, defendant shall and

25 hereby does withdraw any such claims or petitions, and further agrees

26 to waive any right he may have to seek remission or mitigation of the

27 forfeiture of the Forfeitable Property.  Defendant further waives any

28 and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

1          f.   Not to assist any other individual in any effort
2   falsely to contest the forfeiture of the Forfeitable Property.
3          g.   Not to claim that reasonable cause to seize the
4   Forfeitable Property was lacking.
5          h.   To prevent the transfer, sale, destruction, or loss of
6   any and all assets described above to the extent defendant has the
7   ability to do so.
8          i.   To fill out and deliver to the USAO a completed
9   financial statement listing defendant's assets on a form provided by
10  the USAO.
11         j.   That forfeiture of Forfeitable Property shall not be
12  counted toward satisfaction of any special assessment, fine,
13  restitution, costs, or other penalty the Court may impose.
14  With respect to any criminal forfeiture ordered as a result of this
15  plea agreement, defendant waives: (1) the requirements of Federal
16  Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the
17  forfeiture in the charging instrument, announcements of the
18  forfeiture sentencing, and incorporation of the forfeiture in the
19  judgment; (2) all constitutional and statutory challenges to the
20  forfeiture (including by direct appeal, habeas corpus or any other
21  means); and (3) all constitutional, legal, and equitable defenses to
22  the forfeiture of the Forfeitable Property in any proceeding on any
23  grounds including, without limitation, that the forfeiture
24  constitutes an excessive fine or punishment.  Defendant acknowledges
25  that forfeiture of the Forfeitable Property is part of the sentence
26  that may be imposed in this case and waives any failure by the Court
27  to advise defendant of this, pursuant to Federal Rule of Criminal
28

4

1   Procedure 11(b)(1)(J), at the time the Court accepts defendant's

2   guilty plea.

3                          THE USAO'S OBLIGATIONS

4       4.   The USAO agrees to:

5            a.   Not contest facts agreed to in this agreement.

6            b.   Abide by all agreements regarding sentencing contained

7   in this agreement.

8            c.   At the time of sentencing, move to dismiss the

9   remaining counts of the indictment as against defendant.   Defendant

10  agrees, however, that at the time of sentencing the Court may

11  consider any dismissed charges in determining the applicable

12  Sentencing Guidelines range, the propriety and extent of any

13  departure from that range, and the sentence to be imposed.

14           d.   At the time of sentencing, provided that defendant

15  demonstrates an acceptance of responsibility for the offense up to

16  and including the time of sentencing, recommend a two-level reduction

17  in the applicable Sentencing Guidelines offense level, pursuant to

18  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

19  additional one-level reduction if available under that section.

20           e.   Recommend that defendant be sentenced to a term of

21  imprisonment no higher than the low end of the applicable Sentencing

22  Guidelines range provided that the offense level used by the Court to

23  determine that range is 39 or higher and provided that the Court does

24  not depart downward in offense level or criminal history category.

25  For purposes of this agreement, the low end of the Sentencing

26  Guidelines range is that defined by the Sentencing Table in U.S.S.G.

27  Chapter 5, Part A, without regard to reductions in the term of

28  imprisonment that may be permissible through the substitution of

                                   5

1  community confinement or home detention as a result of the offense
2  level falling within Zone B or Zone C of the Sentencing Table.

### NATURE OF THE OFFENSE

4      5.    Defendant understands that for defendant to be guilty of
5  the crime charged in count one, that is, conspiracy to distribute
6  heroin, in violation of Title 21, United States Code, Section 846,
7  841(a)(1), and 841(b)(1)(A)(i), the following must be true: (1) there
8  was an agreement between two or more persons to distribute heroin and
9  (2) the defendant joined in the agreement knowing of its purpose and
10 intending to help accomplish that purpose.

11     6.    Defendant understands that for defendant to be subject to
12 the statutory maximum and statutory minimum sentences set forth below
13 for count one, the government must prove beyond a reasonable doubt
14 that the conspiracy to which defendant participated involved at least
15 1000 grams of heroin.  Defendant admits that he knowingly and
16 intentionally participated in a conspiracy involve at least 29
17 kilograms of heroin.

18     7.    Defendant further understands that the law may require the
19 government to prove beyond a reasonable doubt that the type and
20 quantity of the charged controlled substance fell within the scope of
21 defendant's agreement and were reasonably foreseeable to defendant.
22 Defendant admits that the distribution and possession with intent to
23 distribute at least 1000 grams of heroin fell within the scope of
24 defendant's agreement and were reasonably foreseeable to him.

### PENALTIES

26     8.    Defendant understands that the statutory maximum sentence
27 that the Court can impose for a violation of Title 21, United States
28 Code, Sections 846 and 841(a)(1), (b)(1)(A)(i), is: life

imprisonment; a lifetime period of supervised release; a fine of $10,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9.   Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 21, United States Code, Section 841(a), (b)(1)(A) is: ten years' imprisonment; a lifetime period of supervised release; a fine of $10,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10.   Defendant understands that under 21 U.S.C. § 862a, defendant will not be eligible for assistance under state programs funded under the Social Security Act or Federal Food Stamp Act or for federal food stamp program benefits, and that any such benefits or assistance received by defendant's family members will be reduced to reflect defendant's ineligibility.

11.   Defendant understands that supervised release is a period following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

12.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic

1  rights, such as the right to vote, the right to possess a firearm,
2  the right to hold office, and the right to serve on a jury.
3  Defendant understands that he is pleading guilty to a felony and that
4  it is a federal crime for a convicted felon to possess a firearm or
5  ammunition.  Defendant understands that the conviction in this case
6  may also subject defendant to various other collateral consequences,
7  including but not limited to revocation of probation, parole, or
8  supervised release in another case and suspension or revocation of a
9  professional license.  Defendant understands that unanticipated
10 collateral consequences will not serve as grounds to withdraw
11 defendant's guilty plea.

12      13.  Defendant and his counsel have discussed the fact that, and
13 defendant understands that, if defendant is not a United States
14 citizen, the conviction in this case makes it practically inevitable
15 and a virtual certainty that defendant will be removed or deported
16 from the United States.  Defendant may also be denied United States
17 citizenship and admission to the United States in the future.
18 Defendant understands that while there may be arguments that
19 defendant can raise in immigration proceedings to avoid or delay
20 removal, removal is presumptively mandatory and a virtual certainty
21 in this case.  Defendant further understands that removal and
22 immigration consequences are the subject of a separate proceeding and
23 that no one, including his attorney or the Court, can predict to an
24 absolute certainty the effect of his conviction on his immigration
25 status.  Defendant nevertheless affirms that he wants to plead guilty
26 regardless of any immigration consequences that his plea may entail,
27 even if the consequence is automatic removal from the United States.
28

1                              <u>FACTUAL BASIS</u>

2        14.  Defendant admits that defendant is, in fact, guilty of the

3   offense to which defendant is agreeing to plead guilty.  Defendant

4   and the USAO agree to the statement of facts provided below and agree

5   that this statement of facts is sufficient to support a plea of

6   guilty to the charges described in this agreement and to establish

7   the Sentencing Guidelines factors set forth in paragraph 16 below but

8   is not meant to be a complete recitation of all facts relevant to the

9   underlying criminal conduct or all facts known to either party that

10  relate to that conduct.

11       From, at least 2003 to July 2021, Defendant, along with his

12  brother -- co-conspirator Julio Cesar Martinez -- were the leaders of

13  a heroin distribution organization that distributed thousands of

14  doses of heroin to customers in Orange County.  As a leader of the

15  organization, defendant supervised and directed more than five other

16  criminal participants.  As part of his distribution activities,

17  defendant contacted co-conspirators, including co-defendant Martin

18  Cervantes Romero, also known as "Uncle Martin" in Mexico to obtain

19  heroin.  Defendant negotiated the price and quantity of heroin and

20  facilitated its importation into the United States.  At times,

21  defendant also contacted and received heroin from co-conspirator

22  Violeta Romero, who was Cervantes Romero's niece.

23       Once defendant received the heroin in Orange County, defendant

24  oversaw the distribution of heroin to customers.  Specifically,

25  defendant distributed the heroin through a call center that defendant

26  operated and directed others to operate.  The call center that

27  defendant primarily supervised was managed by co-conspirator Marla

28  Portillo Cordova.  The call center received heroin orders from

                                     9

customers on a daily basis.  After a customer placed a heroin order,
defendant and his co-conspirators arranged for the delivery of the
heroin to the customer using "runners."  Defendant and his co-
conspirators directed the "runners" to deliver the heroin and collect
payment from the customers.  The individuals that defendant directed,
including Cordova, reported to him the amounts distributed and money
collected.

During the course of the distribution operation, defendant was
intercepted in telephone calls using coded language to engage in
distribution activity.

For example, on June 25, 2017, defendant (using TT#6) called co-
conspirator Guerrero (using TT#2) and told her to call him if she
needed anything.  Defendant asked Guerrero had "10 and something,
right?" and Guerrero explained that she had just given a runner three
and from those two whole ones they are going to leave one for 775 and
one for 600.  [TT#2 call #2803].  Defendant and Guerrero used "whole
ones" to refer to a Mexican ounce of heroin, which was 25 grams of
heroin.  Later, defendant and Guerrero coordinated the total sales of
heroin that day, made arrangements to deliver the proceeds from the
sales, and coordinated the resupply of heroin.  Guerrero explained
that there was $1,325 that came in from her side plus $400.  Guerrero
asked if defendant wanted more "food" -- the organization's code word
for heroin -- and defendant said to give two more to co-conspirator
Daniel Zapien.  [TT#2 call #2860].

On October 1, 2017, defendant (using TT#6) called co-conspirator
Cordova discussing someone to fill in for street level distributor
and co-conspirator Jose Cervantes.  Defendant said he would find
someone else before he called Cervantes himself.  They agreed that

1   Cervantes could deliver heroin to customers if they came directly to
2   his house.  Defendant asked how much "work" -- another code word for
3   heroin -- Cervantes had and Cervantes responded "24" -- meaning grams
4   of heroin.  They agreed to send a customer to a parking lot in front
5   of Cervantes's home for a heroin purchase.  [TT#6 calls #1653, 1659,
6   1666, 1672, 1674].

7        On October 1, 2017, defendant (using TT#6) called co-conspirator
8   Violeta Romero (using TT#10) and told her to tell co-conspirator
9   Martin Romero to call him.  The following day, Martin Cervantes
10  Romero called defendant and said that he was located in Mexico.
11  Defendant asked Martin Cervantes Romero how the "work" was that he
12  had.  Martin Cervantes Romero told him it was "very good" and that he
13  wanted to work with defendant, but secretly.  Martin Romero said that
14  his "work" was different than his nephews and that his product comes
15  in "ostrich-like eggs" each one containing "20 dollars" worth,
16  sealed.  Defendant told Martin Romero that he had people in Los
17  Angeles and Riverside that would pay a good price for the heroin.
18  [TT#6 call 1765].

19       On October 2, 2017, defendant (using TT#6) called co-conspirator
20  Violeta Romero and agreed to meet the following day at 9.  Under
21  surveillance, defendant then met with Violeta Romero on October 3,
22  2017 and exchanged heroin.

23       On October 16, 2017, after discussing providing co-conspirator
24  Jose Cervantes heroin with co-conspirator Marla Portillo Cordova,
25  defendant provided Cervantes with heroin.  Shortly after, Orange
26  County Sheriff's Department officers conducted a traffic stop of
27  Cervantes's car, which contained 80 grams of heroin, a digital scale,
28  and a ledger with names and amounts on it.

1    On December 19 and 22, 2016, at co-conspirator Maricela
2  Guerrero's direction, co-conspirator Hunter Sanders -- both of whom
3  worked for defendant's drug distribution network and call center --
4  delivered heroin to victim C.Y.  On December 23, C.Y. died of acute
5  polydrug intoxication, including heroin.

6    During the course of the conspiracy, defendant laundered his
7  money through various means in order to conceal the nature and source
8  of the narcotics proceeds.  For example, defendant had cash narcotics
9  proceeds deposited into third parties' accounts for defendant's
10 benefit.  In December 2018, defendant directed co-conspirators Marla
11 Portillo Cordova, and others, to transfer narcotics proceeds to an
12 escrow account and use the funds to purchase a home at 27295 Legend
13 Lane, Hemet, California, in Cordova's name but for the benefit of
14 defendant.  Defendant then resided in that home purchased with
15 laundered funds.

16   In total, during the course of the conspiracy defendant agreed
17 to distribute and did, in fact, cause the distribution of distribute
18 29 kilograms of heroin, which amounted to thousands of doses of
19 heroin that went to users in Orange County.  All of the heroin
20 distributed by members of the conspiracy was foreseeable to defendant
21 and within the scope of his agreement.  Defendant knew that the
22 substance he distributed was heroin.

23   Defendant admits that the Forfeitable Assets listed in paragraph
24 3(a)(i)-(v) represent or are traceable to proceeds of one or more
25 exchanges of a controlled substance or were intended to be used in
26 one or more exchanges for a controlled substance in violation of 21
27 U.S.C. § 841 et seq.
28

1                         SENTENCING FACTORS

2        15.  Defendant understands that in determining defendant's

3   sentence the Court is required to calculate the applicable Sentencing

4   Guidelines range and to consider that range, possible departures

5   under the Sentencing Guidelines, and the other sentencing factors set

6   forth in 18 U.S.C. § 3553(a).  Defendant understands that the

7   Sentencing Guidelines are advisory only, that defendant cannot have

8   any expectation of receiving a sentence within the calculated

9   Sentencing Guidelines range, and that after considering the

10  Sentencing Guidelines and the other § 3553(a) factors, the Court will

11  be free to exercise its discretion to impose any sentence it finds

12  appropriate between the mandatory minimum and up to the maximum set

13  by statute for the crimes of conviction.

14       16.  Defendant and the USAO agree to the following applicable

15  Sentencing Guidelines factors:

16       Base Offense Level:           34      U.S.S.G. § 2D1.1(a)(5) &

17                                                        (c)(3)

18       Organizer or Leader:         +3/4[1]    U.S.S.G. § 3B1.1(a)

19       Importation of Controlled    +2      U.S.S.G. § 2D1.1(b)(15)(C)

20       Substance:

21       Total Offense Level:         +39

22

23

24

25

---

26       [1] The government and defendant agree that a role enhancement
    applies.  The parties disagree, however, as to whether or not
27  U.S.S.G. § 3B1.1(a) or (b) applies based on the amount of
    participants in the criminal activity.  Defendant agrees to argue
28  that the role increase should be three levels and the government will
    argue that the proper enhancement is four points.

13

1   Defendant and the USAO reserve the right to argue that additional
2   specific offense characteristics, adjustments, and departures under
3   the Sentencing Guidelines are appropriate.

4        17.   Defendant understands that there is no agreement as to
5   defendant's criminal history or criminal history category.

6        18.   Defendant and the USAO reserve the right to argue for a
7   sentence outside the sentencing range established by the Sentencing
8   Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
9   (a)(2), (a)(3), (a)(6), and (a)(7).

10                      WAIVER OF CONSTITUTIONAL RIGHTS

11        19.   Defendant understands that by pleading guilty, defendant
12   gives up the following rights:

13             a.   The right to persist in a plea of not guilty.

14             b.   The right to a speedy and public trial by jury.

15             c.   The right to be represented by counsel -- and if
16   necessary have the Court appoint counsel -- at trial.  Defendant
17   understands, however, that, defendant retains the right to be
18   represented by counsel -- and if necessary have the Court appoint
19   counsel -- at every other stage of the proceeding.

20             d.   The right to be presumed innocent and to have the
21   burden of proof placed on the government to prove defendant guilty
22   beyond a reasonable doubt.

23             e.   The right to confront and cross-examine witnesses
24   against defendant.

25             f.   The right to testify and to present evidence in
26   opposition to the charges, including the right to compel the
27   attendance of witnesses to testify.

28

                                  14

1       g.   The right not to be compelled to testify, and, if

2  defendant chose not to testify or present evidence, to have that

3  choice not be used against defendant.

4       h.   Any and all rights to pursue any affirmative defenses,

5  Fourth Amendment or Fifth Amendment claims, and other pretrial

6  motions that have been filed or could be filed.

7                WAIVER OF APPEAL OF CONVICTION

8     20.  Defendant understands that, with the exception of an appeal

9  based on a claim that defendant's guilty plea was involuntary, by

10  pleading guilty defendant is waiving and giving up any right to

11  appeal defendant's conviction on the offense to which defendant is

12  pleading guilty.  Defendant understands that this waiver includes,

13  but is not limited to, arguments that the statutes to which defendant

14  is pleading guilty are unconstitutional, and any and all claims that

15  the statement of facts provided herein is insufficient to support

16  defendant's plea of guilty.

17       LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

18     21.  Defendant agrees that, provided the Court imposes a total

19  term of imprisonment on the count of conviction of the higher end of

20  the mandatory minimum associated with the charge or Sentencing

21  Guidelines range for an offense level of 40 and the applicable

22  criminal history, defendant gives up the right to appeal all of the

23  following: (a) the procedures and calculations used to determine and

24  impose any portion of the sentence; (b) the term of imprisonment

25  imposed by the Court; (c) the fine imposed by the Court, provided it

26  is within the statutory maximum; (d) to the extent permitted by law,

27  the constitutionality or legality of defendant's sentence, provided

28  it is within the statutory maximum; (e) the term of probation or

supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

22.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

23.  The USAO agrees that, provided (a) all portions of the sentence are at or above the statutory minimum and at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 10 years imprisonment the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

24.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was

involuntary, then (a) the USAO will be relieved of all of its
obligations under this agreement; and (b) should the USAO choose to
pursue any charge that was either dismissed or not filed as a result
of this agreement, then (i) any applicable statute of limitations
will be tolled between the date of defendant's signing of this
agreement and the filing commencing any such action; and
(ii) defendant waives and gives up all defenses based on the statute
of limitations, any claim of pre-indictment delay, or any speedy
trial claim with respect to any such action, except to the extent
that such defenses existed as of the date of defendant's signing this
agreement.

<center>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</center>

25. Defendant agrees that if the count of conviction is
vacated, reversed, or set aside, both the USAO and defendant will be
released from all their obligations under this agreement.

<center>EFFECTIVE DATE OF AGREEMENT</center>

26. This agreement is effective upon signature and execution of
all required certifications by defendant, defendant's counsel, and an
Assistant United States Attorney.

<center>BREACH OF AGREEMENT</center>

27. Defendant agrees that if defendant, at any time after the
signature of this agreement and execution of all required
certifications by defendant, defendant's counsel, and an Assistant
United States Attorney, knowingly violates or fails to perform any of
defendant's obligations under this agreement ("a breach"), the USAO
may declare this agreement breached. All of defendant's obligations
are material, a single breach of this agreement is sufficient for the
USAO to declare a breach, and defendant shall not be deemed to have

<center>17</center>

cured a breach without the express agreement of the USAO in writing.
If the USAO declares this agreement breached, and the Court finds
such a breach to have occurred, then: (a) if defendant has previously
entered a guilty plea pursuant to this agreement, defendant will not
be able to withdraw the guilty plea, and (b) the USAO will be
relieved of all its obligations under this agreement.

28.   Following the Court's finding of a knowing breach of this
agreement by defendant, should the USAO choose to pursue any charge
that was either dismissed or not filed as a result of this agreement,
then:

a.   Defendant agrees that any applicable statute of
limitations is tolled between the date of defendant's signing of this
agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on
the statute of limitations, any claim of pre-indictment delay, or any
speedy trial claim with respect to any such action, except to the
extent that such defenses existed as of the date of defendant's
signing this agreement.

c.   Defendant agrees that: (i) any statements made by
defendant, under oath, at the guilty plea hearing (if such a hearing
occurred prior to the breach); (ii) the agreed to factual basis
statement in this agreement; and (iii) any evidence derived from such
statements, shall be admissible against defendant in any such action
against defendant, and defendant waives and gives up any claim under
the United States Constitution, any statute, Rule 410 of the Federal
Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
Procedure, or any other federal rule, that the statements or any

18

1  evidence derived from the statements should be suppressed or are

2  inadmissible.

3         COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

4                          OFFICE NOT PARTIES

5       29.   Defendant understands that the Court and the United States

6  Probation and Pretrial Services Office are not parties to this

7  agreement and need not accept any of the USAO's sentencing

8  recommendations or the parties' agreements to facts or sentencing

9  factors.

10      30.   Defendant understands that both defendant and the USAO are

11 free to: (a) supplement the facts by supplying relevant information

12 to the United States Probation and Pretrial Services Office and the

13 Court, (b) correct any and all factual misstatements relating to the

14 Court's Sentencing Guidelines calculations and determination of

15 sentence, and (c) argue on appeal and collateral review that the

16 Court's Sentencing Guidelines calculations and the sentence it

17 chooses to impose are not error, although each party agrees to

18 maintain its view that the calculations in paragraph 16 are

19 consistent with the facts of this case.  While this paragraph permits

20 both the USAO and defendant to submit full and complete factual

21 information to the United States Probation and Pretrial Services

22 Office and the Court, even if that factual information may be viewed

23 as inconsistent with the facts agreed to in this agreement, this

24 paragraph does not affect defendant's and the USAO's obligations not

25 to contest the facts agreed to in this agreement.

26      31.   Defendant understands that even if the Court ignores any

27 sentencing recommendation, finds facts or reaches conclusions

28 different from those agreed to, and/or imposes any sentence up to the

1   maximum established by statute, defendant cannot, for that reason,

2   withdraw defendant's guilty plea, and defendant will remain bound to

3   fulfill all defendant's obligations under this agreement.  Defendant

4   understands that no one -- not the prosecutor, defendant's attorney,

5   or the Court -- can make a binding prediction or promise regarding

6   the sentence defendant will receive, except that it will be between

7   the statutory mandatory minimum and within the statutory maximum.

8   <center>NO ADDITIONAL AGREEMENTS</center>

9      32.   Defendant understands that, except as set forth herein,

10   there are no promises, understandings, or agreements between the USAO

11   and defendant or defendant's attorney, and that no additional

12   promise, understanding, or agreement may be entered into unless in a

13   writing signed by all parties or on the record in court.

14   <center>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</center>

15      33.   The parties agree that this agreement will be considered

16   part of the record of defendant's guilty plea hearing as if the

17   entire agreement had been read into the record of the proceeding.

18   AGREED AND ACCEPTED

19   UNITED STATES ATTORNEY'S OFFICE
      FOR THE CENTRAL DISTRICT OF
20   CALIFORNIA

21   E. MARTIN ESTRADA
      United States Attorney

22

23   _____       8/7/2023
      KEVIN J. BUTLER               Date
24   Assistant United States Attorney

25   _____       8 - 3 - 2023
      VICTOR MARTINEZ             Date
26   Defendant

27   _____       8|3|2023
      KENNETH REED               Date
28   Attorney for Defendant VICTOR

<center>20</center>

MARTINEZ

1

<u>CERTIFICATION OF DEFENDANT</u>

2       I have read this agreement in its entirety.  I have had enough

3  time to review and consider this agreement, and I have carefully and

4  thoroughly discussed every part of it with my attorney.  I understand

5  the terms of this agreement, and I voluntarily agree to those terms.

6  I have discussed the evidence with my attorney, and my attorney has

7  advised me of my rights, of possible pretrial motions that might be

8  filed, of possible defenses that might be asserted either prior to or

9  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10  of relevant Sentencing Guidelines provisions, and of the consequences

11  of entering into this agreement.  No promises, inducements, or

12  representations of any kind have been made to me other than those

13  contained in this agreement.  No one has threatened or forced me in

14  any way to enter into this agreement.  I am satisfied with the

15  representation of my attorney in this matter, and I am pleading

16  guilty because I am guilty of the charge and wish to take advantage

17  of the promises set forth in this agreement, and not for any other

18  reason.

19

20  _____          8. 3. 2023
    VICTOR MARTINEZ                           Date
21  Defendant

22

23

24

25

26

27

28

22

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Julio Cesar Martinez's attorney.  I have carefully and
thoroughly discussed every part of this agreement with my client.
Further, I have fully advised my client of his rights, of possible
pretrial motions that might be filed, of possible defenses that might
be asserted either prior to or at trial, of the sentencing factors
set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
provisions, and of the consequences of entering into this agreement.
To my knowledge: no promises, inducements, or representations of any
kind have been made to my client other than those contained in this
agreement; no one has threatened or forced my client in any way to
enter into this agreement; my client's decision to enter into this
agreement is an informed and voluntary one; and the factual basis set
forth in this agreement is sufficient to support my client's entry of
a guilty plea pursuant to this agreement.

_____     8/3/2023
KENNETH REED                        Date
Attorney for Defendant VICTOR
MARTINEZ

_____     8/3/2023
ALEJANDRA L. SCHULTE                Date
Interpeter, certified
in Spanish.

23